IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   Criminal No. 2:22-cr-106 |
| HAROLD EDWARD SPENCER et. al., | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES' NOTICE AND MOTION TO SUBMIT
REDACTED TRIAL EXHIBITS**

Now comes the United States, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Joseph E .DePadilla, and John F. Butler, Assistant United States Attorneys, and respectfully moves this Court, pursuant to Local Rule 49(I) and Federal Rule of Criminal Procedure 49.1(e), to allow the government to submit redacted trial exhibits for those containing victims' facial identities prior to the Court releasing the trial evidence to the public.

I.  Procedural History

On December 16, 2022, Harold Spencer and Jon Morgan were convicted of participating in an armed robbery conspiracy.  ECF. No. 148.  Neither defendant has been sentenced as of this filing.  During the trial, the government admitted multiple videos depicting robberies, which clearly identified victims' faces.  The victims cooperated and identified themselves or co-workers in the videos.  ECF Nos 142-144.  Testifying was undeniably traumatic for many – facing the men who violently robbed them – and reliving the robbery both through their testimony and the viewing of videos.

In July 2023, the Court received a request from a member of the public[1] seeking copies of several exhibits that include both videos and still photographs, some of which clearly capture the victims' faces. Specifically, copies of the following exhibits have been requested:

- Exhibits 1a-1 through 1a-4
- Exhibits 2a-1 through 2a-4
- Exhibits 3a-1 through 3a-4
- Exhibits 4a-1 through 4a-3
- Exhibits 5a-1 through 5a-5
- Exhibits 6a-1 through 6a-7
- Exhibits 7a-1 through 7a-3
- Exhibits 8a-1 through 8a-2
- Exhibit 9
- Exhibits 10a-1 through 10a-8
- Exhibits 13a through 13m
- Exhibits 14a through 14h

The Court notified the parties and asked them to file their positions. As the government understands it, the defense is not taking a position on the request.

The government has reviewed the above-listed exhibits and has identified which of those depict the faces of victims. For those where the victims' faces can be clearly seen, the government seeks to substitute a redacted copy of the exhibit wherein the individual's face will be blurred. This redaction does not compromise the content of the video other than to protect the identity of the individuals that were victimized during the robberies. Moreover, the government maintains this proposed resolution will satisfy the government's concerns raised herein and the Court's concerns regarding the public's right to access.

---

[1] The government believes this person has asked for the exhibits as a private citizen; however, a Google search indicated he may be affiliated with a local media outlet.

II.     Applicable Law

The Fourth Circuit has outlined the procedure that governs a court's review of motions seeking to seal records. The district court first must determine the source of the right of access, then weigh the appropriate competing interests; and, after providing the public with notice of the request, the court must consider less drastic alternatives to sealing. Finally, should the district court determine sealing is appropriate, the court must state its reasons for the decision and for rejecting alternatives to sealing. *Virginia Department of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). *See also United States v. Moussaoui*, 65 F. App'x 881, 889 (4th Cir. 2003) ("As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part."). Thus, courts in the Fourth Circuit apply the same legal framework for sealing where a party moves to file a redacted document, such as in the instant case. *See, e.g., Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07–CV–275–D, 2011 WL 902256, at *1–3 (E.D.N.C. Mar. 15, 2011) (unpublished) (granting parties' motions to seal documents or portions thereof containing alleged trade secrets); *Wolfe v. Green*, Civil Action No. 2:08–01023, 2010 WL 5175165, at *2–3 (S.D.W.Va. Dec. 15, 2010) (unpublished) (granting parties' joint motion to redact filings and holding that parties made necessary showing to address both common law and First Amendment rights of access); B*ethesda Softworks, LLC v. Interplay Entm't Corp.*, Civil Action No. DKC 09–2357, 2010 WL 3781660, at *9–10 (D.Md. Sept. 23, 2010) (unpublished) (treating plaintiff's motion to redact transcript as motion to seal).

As it relates to evidence that has been received during the course of a trial, there is a "right of public access [that] derives from two independent sources: the common law and the First

Amendment." *Level 3 Communications, LLC v. Limelight Networks, Inc.,* 611 F.Supp.2d 572, 576 (E.D. Va. 2009) (quoting *Wash. Post,* 386 F.3d at 575). The First Amendment's guarantee of this right is much stronger than the guarantee provided by the common law. *Wash. Post*, 386 F.3d at 575; *see also Press-Enter. Co. v. Super. Ct. of Cal. for the County of Riverside*, 478 U.S. 1, 15 (1986). Moreover, "where the First Amendment right of access is implicated, a more stringent standard governs [the court's] balancing [of competing interests]." *Level 3*, 611 F.Supp.2d at 580.

The First Amendment "presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values." *Press-Enter. Co. v. Super. Ct. of Cal. Riverside County ("Press-Enterprise I"),* 464 U.S. 501, 510 (1984). When the government advances a request to limit the right of access to sensitive information, it must put forth a compelling interest. *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 603-07 (1982); *accord Press-Enter.*, 478 U.S. at 15; *Press-Enter.*, 464 U.S. at 510; *Wash. Post*, 386 F.3d at 575; *Stone v. Univ. of Md. Med. Sys. Corp*, 855 F.2d 178, 180 (4th Cir. 1988).

There are non-governmental interests that may override the First Amendment's guarantees as well. Two well-recognized examples are the criminal defendant's Sixth Amendment right to a fair trial and an individual's constitutional right to privacy. *Level 3*, 611 F.Supp.2d at 580. *See also Press-Enter.,* 478 U.S. at 9 n.2. (acknowledging that both an accused's Sixth Amendment right to a fair trial and the "interests of those other than the accused," such as the privacy interests of "victims of sex crimes … may justify closing certain aspects of a criminal proceeding") (citing *Globe Newspaper*, 457 U.S. at 607-10). *See also United States v. Biaggi (In re New York Times*

4

*Co.)*, 828 F.2d 110, 116 (2d Cir. 1987) (in deciding whether to unseal certain pretrial motion materials in a criminal case, nothing that "[c]ertainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure … should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted" and that "[t]he job of protecting such interests rests heavily upon the shoulders of the trial judge, since all the parties who may be harmed by disclosure are typically not before the court").

Regardless of whether the source of the asserted countervailing interest is governmental or non-governmental, "[t]he burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Level 3,* 611 F.Supp.2d at 583 (quoting *Wash. Post*, 386 F.3d at 575).

III.   Argument

The government asserts that the countervailing interest to unfettered access is the victims' and witnesses' rights under the Crime Victims' Rights ACT (CVRA).  *See* 18 U.S.C. § 3771.  First, the government considers the victims' faces to be personally identifiable information (PII).  Per the Attorney General, "Department personnel have a responsibility to protect the privacy of victims and witnesses, including their PII and other sensitive information. This responsibility aligns with a victim's right to be treated with fairness and with respect for the victim's dignity and privacy, which is a broad-based right that should be applied in all contacts with victims." Article II: Guidelines Applicable to All Components: Privacy Considerations for Victims and Witnesses, https://www.justice.gov/ag/page/file/1546086/download (2022 edition at 5).  *See also* 18 U.S.C. § 3771(a)(8).

The Attorney General Guidelines for Victim and Witness Assistance identify PII and other sensitive information that should be protected as follows:

> Department personnel engaged in the investigation or prosecution of a crime shall be mindful of the privacy concerns of victims and witnesses throughout the criminal justice process, including detention proceedings, pretrial hearings, trial, sentencing hearings, appeals, and parole, probation, and supervised release proceedings. Department personnel should use their best efforts to protect PII and other sensitive information of victims and witnesses. PII is information that can be used to distinguish or trace an individual victim's or witness's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific victim or witness, such as name, Social Security Number, date of birth, biometric records, or mother's maiden name. PII may also include bank account information or medical information, and in some circumstances, may include address, contact information, location, or place of employment. Department personnel should be aware that information in multiple sources can be put together to trace the identity of victims or witnesses. Sensitive information may include private information, the disclosure or use of which could cause harm, embarrassment, inconvenience, or unfairness to the victim or witness, and other information, including confidential business information, subject to protection under other statutes (e.g., Trade Secrets Act, 18 U.S.C. § 1905), regulations, or Department policies. Best efforts to protect the PII and other sensitive information of victims and witnesses should generally include omission of their PII and other sensitive information from documents that will be placed in the public record, and, where records or documents containing such information are placed in the public record, they should be redacted consistent with court rules and procedure. *See*, e.g., Fed. R. Crim. P. 49.1.

Article II: Guidelines Applicable to All Components: Privacy Considerations for Victims and Witnesses, https://www.justice.gov/ag/page/file/1546086/download (2022 edition at 5).

A video depicting the victims' faces can be used to trace their identity. Moreover, given the nature of the offenses, the disclosure and further dissemination of their identities certainly has the potential to cause further harm, embarrassment, or unfairness to them. Therefore, the government submits that releasing the videos, or releasing them without redactions, would result in a failure to treat the victims' "with fairness and with respect for [their] dignity and privacy." 18 U.S.C. § 3771(a)(8).

Furthermore, pursuant to 18 U.S.C. § 3771(a)(1), victims have the right to be reasonably protected from the accused, which is paramount in this case. All five defendants belonged to a gang set of the United Blood Nation; therefore, the government maintains that disclosing the videos could endanger the victims' safety as retribution for their cooperation and or testimony. According to the Attorney General Guidelines:

> When a victim has been identified, the responsibility of arranging for reasonable victim protection remains with the responsible official of the investigative agency throughout the criminal justice process. Department personnel should consider victims' legitimate security concerns at every point during the criminal justice process—to include the investigation, prosecution, incarceration, and post-incarceration supervision stages—and should coordinate with the responsible official of the investigative agency to promptly assess victim security concerns and take reasonable measures.
>
> Department prosecutors should seek reasonable legal protections for identified victims. These measures may include requests for detention or appropriate conditions of release such as stay-away/no-contact orders, heightened supervision, or drug and alcohol testing. When feasible, prosecutors should coordinate with victim assistance personnel when addressing victim security concerns, particularly regarding safety-planning, the provision of information about civil protective orders, and referrals to crime victim compensation programs that may have options available for emergency housing. Prosecutors should, in their discretion, consider using available resources to address victim security concerns, pursuant to existing rules and regulations governing such resources.

Article V: Victims' Rights Under the CVRA: CVRA Right One: Right to Reasonable Protection, https://www.justice.gov/ag/page/file/1546086/download (2022 edition at 58).

The government submits that showing a millisecond of a video in the courtroom for the trier of fact and any members of the public in attendance is vastly different than sending it to someone who can study it in perpetuity—or upload it on the internet for global consumption. No one in the audience seeing the video is at fingertip length of viewing the footage and they cannot spend more time than what is shown on the clip in the courtroom. So, the victim's face (which is

PII because it identifies the victim), may be seen but no one in the audience can take a picture or video of it to study it in any way. If someone is sent this video, they can pause it, study it, and identify the victim; thereby posing a security risk for the victim. Moreover, in an effort to protect the safety of victims, the government does not include their full names in public filings. It would be contrary to that effort if we were to allow the public to see their faces for an indiscriminate period and unknown purpose.

Prior to the existence of the CVRA, courts have been mindful and protective of victims and their right to privacy versus the right to public access. *See In re Application of KSTP Television*, 504 F.Supp. 360, 363 (D.Minn. 1980) (in a case pre-dating the CVRA, denying motion to release tapes of a crime being perpetrated against a victim for commercial broadcast where there was scant additional value in providing the tape to the public and this was clearly outweighed "by the interest of [the victim] and of the public in maintaining the dignity of the private person").

Furthermore, the statutory rights provided by the CVRA have been held to be a compelling basis to restrict public access. In *United States v. Mitchell*, 2010 WL 890078, at *7 (D. Utah Mar. 8, 2010), the media requested a recording of a doctor interviewing Elizabeth Smart within days of her being recovered from captivity. The court denied the motion and opined as follows:

> Significantly, the victim in this case has a statutory "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). The victim's right to be treated with respect for her dignity and privacy would be ill-served by the release and subsequent broadcast of videotapes that detail her sexual abuse. *See United States v. Shuie,* 504 F.Supp. 360, 363–64 (D.Minn.1980) (refusing to release copies of videotape exhibits based on large part on victim's privacy interests). The court "has a responsibility to exercise an informed discretion as to release of the tapes, with a sensitive appreciation of the circumstances that led to their production." *Nixon,* 435 U.S. at 603. The Supreme Court has recognized that the common law right of inspection has been limited in "the painful and sometimes disgusting details of a divorce case." *Id.* at 598.

The government submits the recordings in the instant case contain images of victims being terrorized and traumatized. Further release and dissemination beyond what was required for trial would violate their rights to privacy and dignity.

Finally, pursuant to the Guidelines, "[p]rosecutors should aim to present material at trial or in hearings in such a manner that balances the presumption of public access to the courts with a victim's right to be treated with fairness and with respect for their dignity and privacy. Motions in limine, protective orders, and other means should be used to prevent unnecessary disclosure in open court of evidence affecting a victim's dignity and privacy, unless disclosure is necessary for legitimate evidentiary purposes or to ensure compliance with court rules or rulings." Article V: Victims' Rights Under the CVRA: CVRA Right Eight: Right to Fairness and Respect for Privacy and Dignity, https://www.justice.gov/ag/page/file/1546086/download (2022 edition at 71).

The government understands that "the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure" this could be deemed a waiver of any rights to restrict further use. *Glaxo Inc. v. Novopharm Ltd.*, 931 F.Supp. 1280, 1301 (E.D.N.C. 1996). However, the government respectfully submits that blurring the victims' faces ahead of trial would have undercut the evidentiary value of the videos, particularly when a trier of fact is trying to compare the credibility of the testimony versus what is visible on screen. Accordingly, the government submits that it has not waived its right to restrict further use of these videos.

The government respectfully asserts that the victims' faces constitutes PII; and, as innocent third parties, their privacy interests should be protected pursuant to the CVRA. Releasing the videos depicting their faces could endanger them, subject them to unwanted contacts, and further

revictimize them beyond the trial process. The government respectfully submits that it has put forth a timely compelling and overriding interest. The government further submits that substituting redacted exhibits, as proposed herein, is a reasonable alternative to sealing—one that will respect the public's First Amendment rights while also protecting the privacy and security of innocent victims.

IV. Conclusion

The government respectfully requests this Court to allow the government to substitute redacted versions of exhibits depicting the victims' faces. The government further requests sufficient time to complete the process of blurring the victim's faces from the affected exhibits. The government anticipates it can have these modified exhibits to the Court by July 21, 2023.

Respectfully submitted,

JESSICA ABER
UNITED STATES ATTORNEY


By:_____/s/_____
Joseph E. DePadilla
John F. Butler
Assistant United States Attorneys
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – joe.depadilla@usdoj.gov
john.f.butler@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on July 19, 2023, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

By: \_\_\_\_\_/s/_____
Joseph DePadilla
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – joe.depadilla@usdoj.gov